Toledo Bar Association *v.* McGill.

Toledo Bar Association *v.* Leizerman.

[Cite as *Toledo Bar Assn. v. McGill* (1992), 64 Ohio St.3d 669.]

(Nos. 92–425 and 92–426—Submitted June
3, 1992—Decided September 16, 1992.)

*Jonathan B. Cherry* and *Peter L. Moran,* for relator.

*Charles W. Kettlewell,* for Michael E. McGill.

*Charles W. Kettlewell* and *Mark H. Aultman,* for E.J. Leizerman.

*John J. Rossi* and *James L. Cox, Jr.,* urging dismissal *pro hac vice,* for *amicus curiae* Academy of Rail Labor Attorneys.

*Bob Gibbins* and *Jeff White,* urging dismissal *pro hac vice,* for *amicus curiae* American Trial Lawyers Association.

---

*Per Curiam.* We agree that respondents committed the disciplinary violations found by the board. Nevertheless, we find some merit in respondents' assertion that DR 5–103(B) should perhaps be re-examined.[1] While the actions undertaken by respondents constituted violations of DR 5–103(B), the arguments raised by them, regarding this rule, warrant some review.

Accordingly, we reject the recommendation of the board, and order that both respondents be publicly reprimanded. Costs taxed to respondents.

*Judgment accordingly.*

SWEENEY, DOUGLAS, H. BROWN and BRYANT, JJ., concur.

WRIGHT, J., concurs in judgment only.

MOYER, C.J., and HOLMES, J., dissent.

PEGGY BRYANT, J., of the Tenth Appellate District, sitting for RESNICK, J.

MOYER, C.J., dissenting. I dissent from the majority opinion and would adopt the recommendation of the Board of Commissioners on Grievances and Discipline that respondents be suspended for six months and that the suspen-

---

1. Other states have reexamined their disciplinary rule to consider the policy issues raised by DR 5–103. For example, Minnesota's version of DR 5–103 permits loans to clients if:
   1. The client demonstrates substantial financial hardship; and
   2. Without the loan the client would be forced to accept an inadequate settlement; and
   3. The fact that the loan may be available is not advertised by the lawyer.
   See Minnesota Rules of Professional Conduct, Rule 1.8(e)(3) (amended Sept. 1, 1985); see, also, District of Columbia Rules of Professional Conduct, Rule 1.8(d)(2) and Comment [5].

sion be stayed on the condition that they engage in no further conduct that constitutes a violation of DR 5–103(B).

The majority has sanctioned respondents with a public reprimand apparently because the majority believes that DR 5–103(B) "should perhaps be re-examined." While I do not disagree with the majority's conclusion in that respect, I do disagree with the majority's conclusion that because we believe that a Disciplinary Rule should be reviewed and perhaps be amended in the future, such possibility of re-examination constitutes a valid reason to reduce a sanction for past conduct that clearly violates the existing rule.

HOLMES, J., dissenting. Believing that there has been a serious violation of existing DR 5–103(B), I dissent from the majority opinion. The majority readily states that such violations occurred, but radically tempers the sanction on the basis that this court may, in the future, alter the applicable Disciplinary Rules. This seems to be a most unusual manner to administer our Disciplinary Rules.

The basic purpose underlying the Disciplinary Rule addressed in this matter is to curtail or regulate the unprofessional solicitation of clients through the advancement of monies, or the direct assistance in attorney monies, during the course of litigation. This rule has been generally accepted as a reasonable rule to effect the intended result. Until properly reviewed and amended by rule of this court, DR 5–103(B), as interpreted by the Board of Commissioners on Grievances and Discipline here, should be followed.

Therefore, I would accept the recommendation of the board in this matter that each respondent receive a six-month suspension from the practice of law, but that the suspension be stayed on the condition that there are no further violations of DR 5–103(B).

MOYER, C.J., concurs in the foregoing dissenting opinion.